**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| v. | * | Case No.: GJH-17-371 |
| **JAMES THOMAS WOODLAND,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Based upon a Superseding Indictment filed on January 24, 2018, the Defendant, James Thomas Woodland, is charged with one count of conspiracy to distribute and possess with intent to distribute five kilograms of cocaine pursuant to 21 U.S.C. § 846 and one count of attempted possession with intent to distribute five kilograms or more of cocaine pursuant to 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii).[1] ECF No. 43. On January 2, 2018, the Court issued a Memorandum Opinion and Order granting Defendant's motion to suppress statements made by the Defendant to law enforcement. ECF No. 31, ECF No. 32 (granting ECF No. 23). The Government now moves the Court to amend the Memorandum Opinion for the purpose of removing a statement made by the Court in which a portion of a Government witness's testimony was described as being "disingenuous." ECF No. 35 (referring to ECF No. 31 at 13 n.10). Argument was heard on this issue at the original Pre-Trial Conference held on January 22, 2018. ECF No. 41. At a second Pre-Trial Conference held on July 9, 2018, ECF No. 54, the

---

[1] After the Court's oral ruling but before the filing of this opinion, the Defendant entered a plea of guilty to a Superseding Information charging him with Conspiracy to Distribute and Possess with Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Cocaine. ECF No. 56.

1

Court denied the Government's Motion and now issues this Memorandum Opinion to explain its reasoning.

**I.   BACKGROUND[3]**

In sum, the Defendant is accused of using his position as a mail carrier with the United States Postal Service ("USPS") to pick-up and deliver packages of controlled dangerous substances to local drug distributors. The hearing on the Motion to Suppress focused on statements he made to law enforcement officers investigating these allegations. Specifically, the Defendant was asked to return from his postal route to the post office where he met with a number of law enforcement officers. The Defendant moved to suppress statements made during this meeting. ECF No. 23. In its Memorandum Opinion, the Court determined that "law enforcement interrogated the Defendant for over two hours, in an area of the Westlake Post Office they controlled, confronted him with evidence of his guilt, interrupted him frequently using an increasingly hostile tone when he denied the allegations, repeatedly threatened him with a lengthy prison sentence, and accompanied and continued recording him during his 'break.'" ECF No. 31 at 1. As a result, the Court determined that the Defendant was in custody during the interrogation and, because he was not provided with his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), his statements would be suppressed. ECF No. 31 at 18.

The Government's Motion to Amend the Opinion focuses on specific findings made regarding Special Agent Ivan Balaguer, a USPS Postal Inspector who was in charge of the investigation and interview of the Defendant and testified at the hearing. Regarding the issue of witness credibility, the Court stated that "[u]nless otherwise stated, the Court found the witnesses to be credible, *but see infra* n. 10, and finds the facts to be consistent with the testimony

---

[3] The facts of the case and the testimony at the motion hearing are described in detail in the Court's Memorandum Opinion granting the Motion to Suppress. Only the facts necessary to the current motion are discussed herein.

summarized below and in the discussion that follows." ECF No. 31 at 3. Later, in footnote 10, in a discussion about why the provision of a "break" from the interrogation did not support the Government's argument that the Defendant was not in custody, the Court stated that:

> Balaguer testified that he accompanied Defendant outside only to be "friendly" and keep him company.[4] The Court finds this, at best, to be disingenuous. A reasonable individual in Defendant's position would not have perceived Balaguer's insistence on accompanying him outside to be a friendly gesture; rather, he would interpret it as a sign that the interview was continuing and he was not free to leave. In fact, Balaguer continued to record Defendant when they went outside, and used the opportunity to obtain consent to search his personal vehicle.

ECF No. 31 at 13 n.10 (footnote not in original).

Concerned that future courts could consider the first two sentences of the footnote to be an adverse credibility finding meriting cross-examination, thus hindering his ability to testify, the Government requests that the Court amend its opinion to remove the comment that Balaguer's testimony was, in part, disingenuous. Defendant opposes the request and, additionally, has indicated that he would seek to cross-examine Balaguer at trial on the Court's finding. ECF No. 39.

## II. DISCUSSION

### A. Government's Motion to Amend

The Government's request for an amended opinion, and the Defendant's desire to use the finding in cross-examination, turns on the Court's meaning of the word "disingenuous." At the outset, it should be noted that the Court intentionally did not choose certain words such as "lied,"

---

[4] Specifically, Balaguer testified on direct examination that "We just accompanied him just to be friendly, just to talk to him, I guess." ECF No. 35-1 at 35. Later, after a question from the Court regarding the smoke-break, the defense and Balaguer had the following exchange:
   Q. You and Detective Skiba did accompany him on the smoke break.
   A. Yes, sir.
   Q. So you weren't prepared to let him go on a smoke break on his own. You stayed with him, correct?
   A. I just stayed with him just to be friendly, casual. That's what it was.
   Q. Just out of friendship.
*Id.* at 89.

3

"deceived," "perjured" or other similar words that would more clearly have indicated that the Court was intending to make an adverse credibility determination. In that regard, the definition provided by the Government, citing the Oxford English Dictionary, is more severe than the Court intended in choosing the word. Specifically, Oxford defines "disingenuous" as "lacking in candour or frankness, insincere, *morally fraudulent*." ECF No. 35 at 7 (emphasis added). Had that definition been placed in front of the Court at the time the opinion was being authored, the Court would have, in all likelihood, chosen a different word. But, in issuing its written opinions, the Court typically does not open the door for parties to seek amendments to those opinions based on their concerns for how specific words might be interpreted in the future, and is not inclined to create such a precedent here unless it is clear that the words chosen by the Court completely mischaracterize the Court's intended meaning. Here, although the dictionary definition does contain stronger language than the Court would have chosen, the common usage of the term is entirely consistent with what was intended by the Court.

For example, Merriam-Webster, while providing a definition that includes language that comes marginally closer to the meaning intended by the Court,[5] provides the following helpful example of the word "disingenuous" being used in a sentence, taken from Bill Bryson's, "A Walk in the Woods":

> "It's had nine murders since 1937 - - about the same as you would get in many small towns." This was correct, but a wee *disingenuous*. The AT [Appalachian trail] had no murders in its first thirty-six years and nine in the past twenty-two.

https://www.merriam-webster.com/dictionary/disingenuous (last visited July 7, 2018) (emphasis in original). The essence of this passage is that the narrator is indicating that the quoted statement was technically correct; that is to say, the speaker was not telling a lie or committing a fraud. But

---

[5] Merriam-Webster's definition of disingenuous includes "giving a false appearance of simple frankness." https://www.merriam-webster.com/dictionary/disingenuous (last visited July 7, 2018).

the narrator is also indicating that the speaker is putting a certain gloss on those facts and making the conclusion seem simpler than it is. Similarly, here, the Court does not doubt that Balaguer was actually attempting to be "friendly" when he accompanied the Defendant as he took his cigarette break. Thus, he did not lie to the Court when he testified as such. But it is also true, in the Court's view, that his primary purpose was not to be friendly but rather to remain in the presence of the Defendant and increase the likelihood that the Defendant would make an incriminating statement. [6] And that makes his testimony that he was being "friendly," without at the same time also explaining his ultimate goal, disingenuous in much the same way it was for the speaker in the Bryson passage to make an otherwise accurate statement without completing the context.[7]

Indeed, the Government states in its opposition that if Balaguer had been asked to explain his answers further, he would have indicated that he meant that he was trying to build a rapport with the Defendant so that he would cooperate. ECF No. 35 at 7–8. The Court accepts that. But in making determinations at a Motion Hearing, the Court is left to issue its ruling based on the testimony as it perceived it at the time and not with the benefit of further explanation and hindsight.

In sum, the Court found Balaguer to be a credible witness overall and relied on his testimony throughout its ruling. Nonetheless, the Court also found the specific statement that he

---

[6] An unbiased person with all of the facts would not commonly refer to this as being "friendly." It is for this reason that, after making the assessment that the comment was disingenuous, the Court then turned to how the Defendant likely perceived the situation. The fact that the finding was not a requirement for the Court's conclusion that the Defendant was in custody does not persuade the Court that its opinion should be amended.

[7] It is also worth noting that since this issue was first raised by the Government, the Court has taken a special interest in noting when others use the word "disingenuous." While far from a scientific study, the Court's observations have confirmed that in general usage, the term typically refers to something less severe than what would commonly be referred to as a lie or outright deceit. The Court has taken particular interest in the fact that it has observed various lawyers, including lawyers representing the Government, use the term to refer to arguments made by opposing counsel where it was abundantly clear that they were not accusing their adversary of the sort of deceit that would require a report to Bar Counsel.

5

went outside with the Defendant to be "friendly" to be disingenuous and will not amend its opinion to say otherwise.

### B. Defendant's Request to Use "Disingenuous" Finding at Trial

Notwithstanding that ruling, the Court will not permit Defendant to cross-examine on this issue at trial. Federal Rule of Evidence 608(b) "permits the introduction of 'specific instances of conduct' on cross-examination only if such evidence is 'probative' of a witness's character for truthfulness or untruthfulness." *United States v. Harris*, 551 F. App'x 699, 705 (4th Cir. 2014). The trial court has "wide discretion to decide whether (and to what extent)" cross-examination about specific instances of conduct "is proper and relevant." *United States v. Smith*, 451 F.3d 209, 223 (4th Cir. 2006). The Rule does not extend to "every instance of misconduct"; "the Rule authorizes inquiry only into instances of misconduct akin to perjury, fraud, swindling, forgery, bribery and embezzlement." *Harris*, 551 Fed. App'x at 705-06. In *United States v. Whitmore*, 359 F.3d 609, 619 (D.C. Cir. 2004), the D.C. Circuit noted that "nothing could be more probative of a witness's character for untruthfulness than evidence that the witness has previously *lied* under oath." (emphasis added).

Here, there is no judicial finding that Balaguer lied. As indicated above, the statement that he was being friendly was not determined by this Court to be untruthful; rather, in the context of the hearing, it was determined to be disingenuous. And given the explanation offered for his statement, the Court finds that the Court's assessment of his testimony at the hearing is not probative of a general character for truthfulness; furthermore, what little probative value there might be would be outweighed by the prejudice of the jury being led to believe, incorrectly, that the presiding judge in this case does not believe the witness to be credible. Thus, the Court's

prior statement will not be allowed to be used in cross-examination pursuant to Federal Rule of Evidence 608(b).

**III.    CONCLUSION**

The Government's Motion to Amend, ECF No. 35, is Denied. However, the Defendant will not be permitted to cross-examine Balaguer at trial regarding the Court's findings.


Dated: July 24, 2018                                  /s/
                                                                GEORGE J. HAZEL
                                                                United States District Judge